939 So.2d 234 (2006)
CRAIG MAURER, Appellant,
v.
STATE OF FLORIDA, Appellee.
Case No. 5D05-1601.
District Court of Appeal of Florida, Fifth District.
Opinion filed October 13, 2006.
James S. Purdy, Public Defender, and Anne Moorman Reeves, Assistant Public Defender, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Kellie Nielan, Assistant Attorney General, Daytona Beach, for Appellee.
SAWAYA, J.
Craig Maurer presents to us an order of restitution and alleges that reversal is warranted because the order erroneously allows double recovery to the victim of his crimes. Specifically, the order, which was entered by the trial court after Maurer entered pleas of guilty to two counts of grand theft and one count of grand theft motor vehicle, requires Maurer to pay the victim $12,475 to compensate her for her loss of money and a number of pieces of jewelry, including several rings that Maurer stole and then pawned. Maurer argues that because the pawned rings were being held by the pawn shop pursuant to police order and could be retrieved upon a $160 payment to the pawn shop, which he claims he had stipulated to pay, the trial court erred by including the value of those rings in the restitution order.
In the constellation of rights provided to Maurer as a criminal defendant, he points to the general principle, applicable in all instances where restitution is awarded, that a defendant may not be ordered to pay an amount of restitution that exceeds the measure of damages suffered by the victim of the crime. See Kirby v. State, 863 So. 2d 238, 243 (Fla. 2003) ("[T]he restitution statute does not permit a double recovery of the same damages. . . ."); Bowman v. State, 698 So. 2d 615, 616 (Fla. 2d DCA 1997) ("A defendant may not be ordered to pay restitution in excess of the damages caused by his criminal conduct. The purpose of restitution is to make the victim whole, not to make him better off than before the theft.") (citations omitted). Certainly, this principle ensures fairness in the process of determining the amount of restitution and we agree with Maurer that it should be applied to this case.
But, we are also required to protect the rights of the innocent crime victim by proper application of the provisions of section 775.089, Florida Statutes (2005), which requires the trial court to order the defendant to make restitution to the victim for "[d]amage or loss caused directly or indirectly by the defendant's offense" and for "[d]amage or loss related to the defendant's criminal episode, unless it finds clear and compelling reasons not to order such restitution." § 775.089(1)(a), Fla. Stat. (2005). This statute is the result of a rather long process of legislative amendment intended to strengthen the rights of innocent crime victims. As the court recently explained in Koile v. State, 934 So. 2d 1226 (Fla. 2006):
In numerous years, the Legislature has passed and amended the restitution statute, and each time the Legislature has stated that its intent is to ensure that victims of crime are properly compensated and respected by the criminal justice system. For example, in 1984 when the Legislature amended section 775.089 to include the provisions at issue, the Legislature made explicit findings that "[e]ven though there is growing recognition that the criminal justice system would cease to function without the cooperation of victims and witnesses, the historic unresponsiveness of the criminal justice system to the real needs of victims and witnesses has not yet been fully corrected." Ch. 84-363, § 2, at 2144, Laws of Fla. Moreover, in the same legislative findings, the Legislature also noted that "[w]hile state law provides the option of financial restitution to victims by defendants, most victims are never fully or even partially compensated by defendants for their injuries and other losses." Id. Accordingly, the Legislature required courts to order the defendant to make restitution to the victims unless clear and compelling reasons existed to justify the nonpayment of restitution. . . . In 1992, the Legislature amended section 775.089 slightly, and in the bill amending the statute specifically noted that it had previously determined that "the state has a moral responsibility to provide aid, care, and support to victims of crime." Ch. 92-107 at 901, Laws of Fla. (preamble).
Id. at 1232-33 (footnotes omitted). This analysis led the court to conclude that the main purpose of section 775.089 is to guarantee that innocent crime victims are compensated for their losses and that anything less than full compensation would defeat the purpose of the statute. Moreover, failure to award the full measure of recompense due the crime victim would thwart another very important purpose of restitution, which is to "serve the rehabilitative, deterrent, and retributive goals of the criminal justice system." Kirby, 863 So. 2d at 242.
There are no clear and compelling reasons not to order restitution here and, therefore, we will proceed to determine whether the restitution order entered by the trial court requires that Maurer pay his victim full compensation and no more. In order to resolve this issue, we must determine whether a stipulation was made and, if so, its terms and conditions. While not a model of clarity, the transcript of the restitution hearing does strongly suggest that a stipulation was entered into that Maurer would pay $160 to retrieve the stolen rings from the pawn shop or, at the least, the parties contemplated addressing the pawned items at a later hearing. The logic of such an approach is clear. If and until the pawned items are actually returned to the victim, she is not made whole. Other than the attorneys' oral representations at the restitution hearing, there was no evidence of the exact cost to recover the pawned rings from the pawn shop or even evidence that the pawn shop still had possession of the rings.[1] The trial court was obviously concerned about entering an order requiring Maurer to pay $160 because it was possible that the victim would take the money to the pawn shop only to discover that the rings were not there.
Based on our review of the record, we conclude that in order to comply with our responsibility to protect the rights of the crime victim to receive full compensation for her losses while ensuring that Maurer is not required to pay any more than is necessary to achieve that objective, we must reverse the order of restitution and remand this case to the trial court for a hearing to determine the status of the pawned items. If the victim has not obtained the pawned items and the items are still being held by the pawn shop, then the cost of getting them out of pawn should be imposed as restitution and the restitution order modified to subtract the value of these items. If the pawn shop did not hold the items and the victim never received them, then restitution in the full amount originally ordered would be appropriate.
REVERSED and REMANDED.
PLEUS, C.J. and THOMPSON, J., concur.
NOTES
[1] Section 539.001(16), Florida Statutes, provides that law enforcement may place a hold order on items in possession of a pawnbroker where there is probable cause to believe the items were misappropriated by the conveying customer. However, the hold order is good for only 90 days unless extended by court order. The record in the instant case does not contain a copy of the hold order referred to at the restitution hearing, so no dates are ascertainable. It is entirely possible that the hold expired and the pawnbroker disposed of the rings as provided for by statute.